IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

JAMES EDWIN STOUT, )
 )
 )
     Plaintiff, )
 )
     v. ) No. CIV-07-123-JHP
 )
CITY OF WAGONER, and CHIEF )
OF POLICE TERRY HORNBUCKLE, )
in his Individual capacity, )
 )
 )
     Defendants. )

# OPINION and ORDER

     Now before the Court is Defendants' Motion for Summary Judgment (Dkt.# 32), Plaintiff's Response to said motion, and Defendants' Reply. Plaintiff seeks judgment for alleged wrongful termination in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12101, et seq. Specifically, Plaintiff alleges Defendants regarded him as disabled and that was a motivating factor in his termination. Plaintiff also asserts a violation of his constitutional right to free speech guaranteed by the First Amendment to the United States Constitution, actionable through the Fourteenth Amendment and 42 U.S.C. §1983. In this regard, Plaintiff contends Chief Hornbuckle retaliated against him in December 2005 for a statement made in 1995 in opposition to Hornbuckle's election. The Defendants deny Plaintiff's allegations. Defendants contend Plaintiff was terminated on December 27, 2005, for misconduct and failure to properly perform his job in response to an emergency call on December 22, 2005. Defendant Hornbuckle contends he is entitled to qualified immunity as to Plaintiff's Section 1983 claim.

1

In general, summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).* An issue is "material" if proof thereof might affect the outcome of the lawsuit as assessed from the controlling substantive law. *Id. at 249.*

In considering a motion for summary judgment, this court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).* Furthermore, if on any part of the prima facie case there is insufficient evidence to require submission of the case to the jury, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).*

"The purpose of a summary judgment motion is to assess whether a trial is necessary." *Berry v. T-Mobile USA, Inc., 490 F.3d 1211, 1215 (10th Cir. 2007)* citing *White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995).* "In other words, there 'must be evidence on which the jury could reasonably find for the plaintiff.'" *Id.* citing *Panis v. Mission Hills Bank, N.A., 60 F.3d 1486, 1490 (10th Cir. 1995).* In addition, one of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).*

**BACKGROUND**

Plaintiff was initially hired by the City on September 16, 1985, as night-shift patrolman. Plaintiff admitted in his deposition testimony he did not have an employment contract with the City and was an at-will employee. From 1985 until 1995, although Plaintiff

did receive intermittent salary raises, he never received a promotion in rank. In 1995, Hornbuckle successfully campaigned for Chief of Police over the incumbent, Jim Parker. On March 23, 1995, eight City Police Department employees, including Plaintiff, ran an advertisement in the local newspaper indicating that they did not support Hornbuckle's campaign for Chief of Police. Of the seven other police officers who ran the advertisement, four ultimately left the police department, one is deceased and two are still employed with the police department. Other than Plaintiff, none were terminated.

Shortly after being elected, on May 1, 1995, Hornbuckle offered to promote Plaintiff to 2nd Lieutenant, which Plaintiff declined. Plaintiff asserts he declined the offer of advancement because "he was afraid that in light of Hornbuckle's animus, he was being set up for disciplinary action..." (Plaintiff's Resp. at 2). Plaintiff did eventually accept the promotion to 2nd Lieutenant offered to him by Hornbuckle.

Prior to December 2005, Plaintiff generally received satisfactory annual performance reviews. Defendants contend the event prompting Plaintiff's pre-termination hearing was his failure to appropriately respond to an Emergency 911 domestic violence call on December 22, 2005. Defendants allege Plaintiff was aware he was responding to a 911 call and did not activate the lights and sirens in his vehicle when he was dispatched. Upon arriving, Plaintiff noticed signs of physical injury to the victim's head. The victim of domestic abuse had been beaten by her estranged common law husband. Defendants contend Plaintiff did not look in the apartment to determine if the victim's estranged husband was still present, and did not prepare a police report. Instead, Defendants argue Plaintiff told the victim that if she desired to fill out a police report she could come to the police department. Plaintiff contends, however, that it was the victim who did not want to have a report executed at the scene due to the fact it was 2 a.m., she had just undergone a traumatic experience, and she had a small child with her. Plaintiff contends he informed the victim she could fill out a report at the Police Station if she so desired.

On December 27, 2005, a pre-termination hearing was held with Hornbuckle, the

City's Human Resources Director, Faye Bemo, and Plaintiff to review Plaintiff's performance with regard to the December 22, 2005, 911 call.  Plaintiff contends he was unaware this was a "pre-termination" hearing.  Plaintiff was told by Hornbuckle at the hearing that he had not properly handled the 911 call and was given the option by Hornbuckle to resign or be fired.  Plaintiff's employment was terminated on December 27, 2005.

After being terminated, Plaintiff could have appealed his termination to the City council.  Plaintiff states he was aware he could go to the City council as a citizen, but was unaware of the procedures for carrying out an appeal.  Plaintiff further contends he had never been informed by his employer of his right of appeal at any time before he was terminated.

With regard to his disability claim, Plaintiff testified that in 2005 he suffered from asthma, hypertension, and sleep apnea.  Plaintiff's sleep apnea was diagnosed in December 2005.  Plaintiff was prescribed an inhaler for his asthma, medication for his hypertension, and a CPAP machine for his sleep apnea. Plaintiff claims that neither the asthma, hypertension, nor sleep apnea hindered his ability to perform his employment duties.  There is a factual dispute as to whether Plaintiff ever discussed his health problems with Hornbuckle, or other officers at the station. It is undisputed that Plaintiff never requested any special accommodations with anyone at the City or at the Police Department.  Additionally, Plaintiff presents evidence, although contested, that Defendants also considered his mental health at the time of his termination.

**I. Wrongful Termination in Violation of the ADA**

Plaintiff claims he was qualified for the position of police officer, and that he was able to perform the essential functions of his position.  Plaintiff further claims that, notwithstanding his ability to perform the essential functions of his job, Defendants regarded him as disabled and were motivated, in whole or in part, to terminate Plaintiff's employment

because they so regarded him as disabled.

Defendants deny that Plaintiff had a disability, deny knowledge of any disability, deny he was regarded as disabled, and deny Plaintiff was terminated because of any disability. Rather, Defendants claim Plaintiff was terminated on December 27, 2005, because of misconduct that occurred on December 22, 2005. Specifically, Plaintiff failed to properly respond to a 911 emergency domestic violence call by a citizen of the City of Wagoner. Additionally, Plaintiff failed to make a report of the incident.

Plaintiff argues that although he is not disabled, the defendants regarded him as disabled. The "Equal Employment Opportunity Commission regulations presents three different ways in which an individual may satisfy the meaning of "regarded as having a disability: (1) the individual may have an impairment that is not substantially limiting but is perceived by the defendant as constituting a substantially limiting impairment; (2) the individual may have an impairment that is substantially limiting only because of the attitudes of others toward the impairment; or (3) the individual may have no impairment at all but is regarded as having a substantially limiting impairment." 29 C.F.R. §1630.2(l). In addition, a claimant may be deemed to have a "record" of disability either by having a history of substantial limitation of a major life activity or by having been misclassified as having such an impairment. 29 C.F.R. §1630.2(k). An employer's knowledge of an impairment alone is insufficient to establish the employer regarded the employee as disabled. _Steele v. Thiokol Corp._, 241 F.3d 1248, 1256 (10th Cir. 2001).

The "focus is on an employer's subjective state of mind: did the employer mistakenly believe that the plaintiff was substantially limited in performing a major life activity?" _Justice v. Crown Cork and Seal Co._, 2008 WL 2246967 (C.A.10 (Wyo.))(June 3, 2008) citing _Sutton v. United Air Lines, Inc._, 527 U.S. 471, 489 (1999). In answering this question the Tenth Circuit Court of Appeals has held that "only the major life activity or activities asserted by the plaintiff [are analyzed]." _Id._ citing _Rakity v. Dillon Cos._, 302 F.3d 1152, 1158 (10th Cir. 2002). In the instant case, Plaintiff argues Defendants regarded him as substantially limited in the major life activity of working.

To survive summary judgment on this claim, Plaintiff must present some evidence that Defendants believed he was "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities. *EEOC v. Heartway Corp.*, 466 F.3d 1156, 1162 (10th Cir. 2006)(quoting 29 C.F.R. §1630.2(j)(3)(I)).

Based on the record, the Court concludes a reasonable factfinder could infer that Defendants believed Plaintiff was significantly restricted in the ability to perform either a class of jobs, or a broad range of jobs in various classes. Hornbuckle stated he was concerned about the fact Plaintiff could not climb the stairs. Hornbuckle also testified he had gotten reports from Plaintiff's supervisor about Plaintiff's weight, and how Plaintiff was having trouble responding to calls quickly. Hornbuckle stated to Tara Rhoads he believed Plaintiff to be unfit for work in law enforcement. Further, there is evidence Defendants were concerned about Plaintiff's mental condition. Additionally, the record reveals there may have been other jobs available in the department which could have accommodated Plaintiff, if he were in fact disabled. This evidence suggests that Defendants believed Plaintiff's problems could disqualify him from employment in law enforcement in general.

Plaintiff alleges his record was largely without incident, although in the four years immediately prior to his termination his job performance had risen dramatically, from "Fair/Satisfactory" in June 2002, to "Good/Excellent" in June of 2005. Plaintiff asserts he served in the U.S. Navy honorably for four years, and as a police officer received Officer of the Year, Officer of the Month, and Twenty Year awards, had become a prestigious Firearms Instructor and Certified Sniper, and had served on the force longer than anyone else but Hornbuckle. In September of 2005, shortly before Plaintiff's termination, the City of Wagoner honored Plaintiff with an "Eddie Stout Day." In light of this record, Plaintiff contends the Defendants terminated him using the pretextual deficiencies in his handling of the December 22, 2005, domestic violence call.

Plaintiff contends that Defendants have been unable to establish there was a policy, law, rule, guideline, instruction, practice or procedure that Plaintiff violated. Moreover,

Plaintiff argues that to the extent it may be maintained that such a policy exists in the materials provided by the police department to its employees, the City of Wagoner does not offer training or instruction in the contents of those materials. Further, Plaintiff argues Defendants did not adequately investigate his handling of the domestic dispute and ironically, did not make a report of the investigation themselves. Finally, the record demonstrates that although Hornbuckle has testified he knew nothing of Plaintiff's medical condition, Hornbuckle did in fact raise these issues at the pre-termination hearing.

The Court finds there remain factual disputes as to whether Defendants were aware of Plaintiff's health problems, whether Defendants regarded Plaintiff as disabled, and whether Plaintiff was terminated due to either Defendants perception or misperception of Plaintiff's problems.

## II. First Amendment Claim

Plaintiff also claims he was terminated in retaliation for protected speech. Specifically, Plaintiff contends he was terminated because he supported Hornbuckle's opponent in an election ten years prior to his termination. The Tenth Circuit Court of Appeals has held that the First Amendment protects public employees from discrimination based upon their political beliefs, affiliation, or non-affiliation unless their work requires political allegiance. *Mason v. Oklahoma Turnpike Authority*, 115 F.3d 1442, 1451 (10th Cir. 1997) citing *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 68-69 (1990); *Branti v. Finkel*, 445 U.S. 507, 513 (1980).

The Supreme Court outlined the test for a 42 U.S.C. §1983 free speech claim in *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968), and its progeny; *McFall v. Bednar*, 407 F.3d 1081, 1087-1088 (10th Cir. 2005). First, the court must determine whether the employee's speech regards a matter of public concern. *Id.* at 1088 citing *Dill v. City of Edmond*, 155 F.3d 1193, 1201 (10th Cir. 1998). The Tenth Circuit has held that the threshold inquiry "in assessing the free speech claim of a discharged government employee is "whether the

employee has spoken 'as a citizen upon matters of public concern' or merely 'as an employee upon matters only of personal interest.'" *McFall v. Bednar*, 407 F.3d at 1088 citing *Finn v. New Mexico*, 249 F.3d 1241, 1247 (10th Cir. 2001)(quoting *Connick v. Myers*, 461 U.S. 138, 147 (1983)).

Further, the Tenth Circuit opined that whether an employee's speech addresses a matter of public concern depends on the content, form, and context of the statement and whether the speech can "be fairly considered as relating to any matter of political, social, or other concern to the community." *Id*. citing *Connick v. Myers*, 461 U.S. 138, 146-48 (1983). If the first prong is met, then the court must entertain a balancing test between the employee's interest as a citizen in commenting upon matters of public concern against "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through it's employees." *Id*. citing *Dill v. City of Edmond*, 155 F.3d at 1201.

If the plaintiff is able to satisfy the first two parts of the Pickering test, the employee's speech is protected and the plaintiff must now show that his or her "speech was a substantial or motivating factor behind the adverse employment decision."*Id*.; citing *Belcher v. City of McAlister, Oklahoma*, 324 F.3d 1203, 1206-07 (10th Cir. 2003); *Gardetto v. Mason*, 100 F.3d 803, 811 (10th Cir. 1996).

Finally, if the plaintiff has met the first three parts of the test, then the burden shifts to the employer to prove "that it would have acted in the same way toward the employee in the absence of the protected speech." *Id*.

The negative advertisement that Plaintiff and the other Wagoner police officers ran in 1995 does not rise to the level of constitutionally protected speech. The negative advertisement was nothing more than personal opinion as opposed to any legitimate matter of public concern. For example, the advertisement does not provide any reasons as to why certain members of the police department did not support Hornbuckle. In addition, the advertisement does not attempt to attack any issues or platform that Hornbuckle supports. The local community of Wagoner does not benefit in any way from this advertisement as this ad was merely a matter of personal interest. As a result, the communication in question is

8

not a matter of public concern; the first prong of the test is not met; and Plaintiff's claim fails as a matter of law.

With regard to the third prong of the test, the Tenth Circuit has held that in order for a plaintiff to adequately set forth a claim for retaliatory discharge, temporal proximity to the adverse action is a necessary element. *Baca v. Sklar*, 389 F.3d 1210, 1221 (10th Cir. 2005). However, the *Baca* Court stated that "[t]he mere temporal proximity of Plaintiff's protected speech to [the adverse] action is insufficient, without more, to establish retaliatory motive." *Id.*; citing *Butler v. City of Prairie Village*, 172 F.3d at 746 (10th Cir. 1999). The Court finds, and agrees with the Tenth Circuit case of *Wells v. Colorado Dept. of Transportation, 325 F.3d 1205, 1220 (10th Cir. 2003)*, wherein the Court refused "to sustain a claim that must rest on speculation that those offended by a lawsuit that had been on-going for nine years would retaliate only after the suit was dismissed." Similarly, this Court refuses to sustain Plaintiff's §1983 claim based purely on speculation that Hornbuckle harbored resentment and animosity for ten years, only to finally terminate Plaintiff in 2005. As the Tenth Circuit has recognized, the reason a lapse of time would tend to establish that retaliation was not a motivating factor "is that anger or resentment - the motivation for possible retaliation - is an emotion that tends to diminish with time. When retaliation for an act occurs well after the act, one wonders why the retaliator failed to act sooner." *Wells*, at 1217.

Accordingly, Defendants' Motion for Summary Judgment is granted in part and denied in part, consistent with this Opinion and Order.

**IT IS SO ORDERED this 24th day of June 2008.**

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma